**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RAMESH KUMAR, A# 241 032 885,<br><br>Petitioner,<br><br>v.<br><br>ANGELA HOOVER, Warden of Clinton County Correctional Facility, et al.,<br><br>Respondents. | CIVIL ACTION NO. 3:26-cv-01704<br><br>(SAPORITO, J.) |

**AMENDED MEMORANDUM**

On June 22, 2026, the Court received and filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, signed and mailed by the pro se petitioner on June 16, 2026. Doc. 1. In this petition, Ramesh Kumar, a native and citizen of India, challenges the legality of his pre-removal immigration detention without an individualized bond hearing under 8 U.S.C. § 1225(b)(2)(A). At the time of filing, Kumar was being held in the custody of United States Immigration and Customs Enforcement ("ICE") at Clinton County Correctional Facility, located in Clinton County, Pennsylvania.[1]

---

[1] We note that, although Kumar commenced this action with a pro

*(continued on next page)*

## I. Background and Procedural History

Kumar initially entered the United States without inspection at or near Tecate, California, on or about March 29, 2023. Kumar was encountered by United States Border Patrol shortly thereafter and detained briefly. Upon his release from that detention, Kumar was served with a Notice to Appear, DHS Form I-862, dated March 31, 2023, which declared him to be subject to removal as an "alien present in the United States who has not been admitted or paroled,"[2] and which directed him to appear for a hearing before an immigration judge in New York, New York, on August 10, 2023. Resp. Ex. 2, Doc. 8-2.

After entering the United States, Kumar established residence in Richmond Hill, New York. He has no criminal history.

On May 27, 2026, Kumar was arrested by immigration officials while visiting friends in Pennsylvania. Kumar was a passenger in a vehicle driven by Jashandeep Singh, the subject of an ICE targeted enforcement action. ICE officers observed Singh entering the driver's

---

se petition, he has since retained counsel to represent him in this matter, and counsel has filed a reply to the respondent's answer. The original pro se petition, however, remains the operative pleading in this matter.

[2] Notably, a box on the Notice for declaring her to be an "arriving alien" was *not* checked. Resp. Ex. 2, Doc. 8-2.

seat of a vehicle registered in his name and conducted a vehicle stop. When ICE officers attempted to ascertain the identity of the vehicle's occupants, Kumar presented his New York State driver's license and admitted his immigration status. Kumar was then detained by ICE and transported to a local ICE office in Williamsport, Pennsylvania, for processing.

Kumar was then transported to Clinton County Correctional Facility, where he was incarcerated at the time when he commenced this habeas proceeding. He was subsequently transferred to Pike County Correctional Facility, where he remains in civil immigration detention. He has been denied any opportunity to post bond or to be released on other conditions.

## II. DISCUSSION

> Since the United States began restricting immigration into this country in the late 19th century, it has distinguished between those noncitizens seeking entry into the country and those already residing within it. Noncitizens "stopped at the boundary line" who have "gained no foothold in the United States" do not enjoy the same constitutional protections afforded to persons inside the United States. But once a noncitizen enters the United States, "the legal circumstance changes," for the constitutional right to due process applies to all "persons" within our nation's borders, "whether their presence here is lawful,

> unlawful, temporary, or permanent." This distinction between noncitizens who have entered and reside in the United States and those who have not yet entered "runs throughout immigration law."

*Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1113 (D. Idaho 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (citations omitted).

Consistent with this distinction, "[t]wo statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. § 1225 and 1226." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1111 (E.D. Cal. Sept. 23, 2025), *appeal filed*, No. 25-7429 (9th Cir. Nov. 25, 2025). As concisely summarized by the Supreme Court: "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added).

Under § 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as an 'applicant for admission.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). Applicants for admission may be detained pending removal

under two separate provisions: § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(1) applies to aliens who (*A*) are arriving in the United States, *see* § 1225(b)(1)(A)(i) (the "arriving aliens provision"), or have been physically present in the United States for less than two years without being admitted or paroled, *see* § 1225(b)(1)(A)(iii) (the "designation provision"),[3] *and* (*B*) are inadmissible either for misrepresenting a material fact while attempting to gain admission to the United States or for lacking proper immigration documentation. *See* 8 U.S.C. § 1225(b)(1)(A); *see also* § 1182(a)(6)(C) (inadmissibility based on misrepresentation); § 1182(a)(7) (inadmissibility for lack of documentation). For these aliens, § 1225(b)(1) provides for expedited

[3] This so-called "designation provision" further limits this group of aliens subject to expedited removal proceedings to certain categories of aliens expressly designated by the Secretary of Homeland Security, *see* § 1225(b)(1)(a)(ii), but the current scope of that designation is "the full scope of statutory authority," and thus all aliens who have not been admitted or paroled into the United States and who have not been physically present in the United States continuously for the two-year period prior to determination of inadmissibility are subject to expedited removal under § 1225(b)(1). *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025); *see also Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 619–20 (D.C. Cir. 2020) (providing a historic overview of groups designated under § 1225(b)(1)(a)(ii)); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 62–64 (D.D.C. 2025) (same), *appeal filed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025).

removal proceedings without further hearing or review, unless the alien expresses a fear of persecution or an intent to apply for asylum, in which case the alien is subject to mandatory detention pending a final determination of credible fear of persecution and, if found not to have such a fear, until removal. *See* § 1225(b)(1)(B). *See generally Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 618–20 (D.C. Cir. 2020) (summarizing expedited removal provisions); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 291–92 (E.D.N.Y. 2025) (same); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 59–64 (D.D.C. 2025) (same), *appeal filed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025).

Section 1225(b)(2) is a "broader . . . catchall provision" that applies to other "applicants for admission" who are "seeking admission" to the United States.[4] *See* 8 U.S.C. § 1225(b)(2)(A); *Jennings*, 583 U.S. at 287. Under § 1225(b)(2), an applicant for admission is placed into ordinary (not expedited) removal proceedings. *See* § 1225(b)(2)(A); *see also id.* § 1229a (describing ordinary removal proceedings before an immigration judge). With limited exceptions, however, an alien is subject to mandatory

[4] The statute expressly provides that § 1225(b)(2) does not apply to those to whom § 1225(b)(1) applies, as well as other categories not relevant here. *See* 8 U.S.C. § 1225(b)(2)(B).

detention under § 1225(b)(2) while removal proceedings remain pending. *See* § 1225(b)(2)(A); *see also* § 1182(d)(5) (authorizing the Secretary of Homeland Security to grant humanitarian parole to aliens awaiting removal proceedings); § 1225(b)(2)(C) (providing that aliens arriving on land from a foreign territory contiguous to the United States may be returned to that foreign territory pending removal proceedings, rather than be detained); *Quijada Cordoba*, 809 F. Supp. 3d at 1113 ("Section 1225(b) mandates detention without bond hearings, except for narrow humanitarian parole.").

Meanwhile, as noted above, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Such aliens who are already present in the United States may be detained pending removal under two separate provisions: § 1226(a) and § 1226(c).

Section 1226(a) prescribes a discretionary detention framework for these aliens when subject to removal proceedings, providing that: "On a warrant issued by the Attorney General,[5] an alien may be arrested and

[5] This statutory authority to issue immigration arrest warrants has been delegated to a number of supervisory immigration officials listed in

*(continued on next page)*

detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The statute further provides that such an alien may be released on bond while removal proceedings remain pending. *Id.* § 1226(a)(2). The relevant implementing regulations provide that a § 1226(a) detainee may be released on bond upon showing "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). Immigration authorities[6] are tasked with an initial bond or custody determination, *see id.* §§ 236.1(c)(8), 1236.1(c)(8), after which the alien may request an individualized bond hearing before an immigration judge, *see id.* §§ 236.1(d)(1), 1236.1(d)(1); *see also* § 1003.19 (setting out procedures for the review of bond determinations by immigration judges). *See generally Nielsen v. Preap*, 586 U.S. 392, 397 (2019) ("If the alien is detained, he may seek review of his detention by an officer at the Department of Homeland Security and then by an immigration judge (both exercising power delegated by the Secretary); and the alien may

---

the applicable regulations. *See* 8 C.F.R. § 287.5(e)(2); *see also id.* §§ 236.1(b), 1236.1(b).

[6] The same supervisory immigration officials authorized to issue arrest warrants. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).

secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.") (citations omitted). An adverse bond determination by the immigration judge can be appealed to the Board of Immigration Appeals. *See* 8 U.S.C. §§ 236.1(d)(3), 1236.1(d)(3). *See generally Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 275 (3d Cir. 2018) (summarizing § 1226(a) bond procedures).

Finally, "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. This subsection specifies certain criminal histories that require mandatory detention of aliens who would otherwise be eligible for a bond hearing under § 1226(a). *See* 8 U.S.C. § 1226(c). Such criminal aliens may only be released under very narrow circumstances involving a determination by the Attorney General that the alien's release is necessary for witness-protection purposes and the alien does not pose a flight risk or a danger to the community. *See id.* § 1226(c)(4); *see also Jennings*, 583 U.S. at 289.

The petitioner in this case, Ramesh Kumar, has been detained by immigration authorities without a bond determination pending

disposition of his ordinary, § 1229a removal proceedings.[7] In his petition, Kumar argues that, because he was detained within the interior of the United States, he is not properly subject to mandatory pre-removal-order detention under § 1225(b)(2). Rather, he contends that he may only be properly detained under § 1226(a), which requires that he be given an opportunity for an individualized bond hearing. Kumar further asserts a claim under the Administrative Procedures Act ("APA") based on the agency's failure to follow its own bond regulations.[8] In addition to these statutory arguments, Kumar argues that his pre-removal detention without an opportunity to be considered for release on bond violates his Fifth Amendment due process rights.

The respondent, on the other hand, argues that § 1225(b)(2) does properly apply to the petitioner, and that it prescribes mandatory detention.[9] The respondent further argues that applying § 1225(b)(2)

---

[7] The parties do not dispute that the petitioner has been putatively detained without an opportunity for release on bond pursuant to § 1225(b)(2).

[8] Having granted relief on the basis of the petitioner's primary statutory claim—that his detention is pursuant to § 1226(a) rather than § 1225(b)(2)—we decline to reach the petitioner's alternative argument that his detention violates the APA.

[9] We note that the respondent's answer does not engage with the petitioner's APA claim at all. In any event, see *supra* note 8.

here comports with due process.

The Third Circuit has recently addressed these very same legal questions under materially identical facts in a precedential opinion. *See Buele Morocho v. Warden Phila. FDC*, ___ F.4th ____, 2026 WL 2546223 (3d Cir. Aug. 28, 2026). In *Buele Morocho*, the Third Circuit held that "for § 1225(b)(2)(A) to apply, the noncitizen must do more than be an 'applicant for admission.'" *Id.* at *3. Rather, "to fall within § 1225(b)(2)(A)'s ambit, an 'applicant for admission' must engage in present or ongoing action to gain 'admission,' that is, 'lawful entry . . . into the United States after inspection and authorization by an immigration officer.'" *Id.* (quoting 8 U.S.C. § 1101(a)(13)(A) (ellipsis in original). In other words, to be subject to § 1225(b)(2)(A), an "applicant for admission" must "engage in an ongoing affirmative act to 'seek[] admission' to the United States." *Id.* at *4; *see also id.* at *5 ("§ 1225(b) governs noncitizens arriving to the United States whereas § 1226 governs those already within our borders.").[10]

[10] *Accord Barbosa da Cunha v. Freden*, 175 F.4th 61, 73, 75 (2d Cir. 2026) ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission. . . . Section 1225(b)(2)(A)

*(continued on next page)*

applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'"); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) ("[T]he text, statutory context, legislative history, and long-standing Executive practice all confirm that § 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior."); *Hernandez Alvarez v. Warden*, 175 F.4th 1258, 1262 (11th Cir. 2026) ("The text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (holding that noncitizens without lawful status who had lived in the United States for years were not "seeking admission" and thus were not subject to § 1225(b)(2)(A)'s mandatory detention scheme); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1239 (10th Cir. 2026) ("The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border." (footnote omitted)); *id.* at 1248 ("§ 1225(b)(2)(A) applies at the border while § 1226(a) applies to the interior."); *Cirrus Rojas v. Olson*, 183 F.4th 909, 931 (7th Cir. 2026) (holding that, "based on the INA's text, structure, and history," a noncitizen, who entered the United States without inspection and was detained after living there for several years, "is present in the United States without admission and is not 'seeking admission,'" and he "is therefore not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is eligible for a bond hearing under 8 U.S.C. § 1226(a)"); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026) ("[Section] 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable aliens present in the interior of the United States."); *Guerrero Orellana v. Moniz*, ___ F.4th ____, 2026 WL 2352042, at *11 (1st

*(continued on next page)*

As in *Buele Morocho*, Kumar is no longer seeking admission into the United States. At the time of his arrest and detention, he was not actively attempting to come into the United States at a border or port of entry. Rather, he is already here, having resided within the United States for an extended period of time. "Because § 1225(b)(2)(A) does not apply to [Kumar] as [he] [was] not detained at the border, [his] detention[] [was] unlawful under that provision of the INA." *Id.* at *7.

Moreover, the Third Circuit also concluded that the *Buele Morocho* petitioner's detention without a bond hearing violated the Due Process Clause. *Id.* at *8. As in *Buele Morocho*, we assess this petitioner's due process claim by considering the *Mathews* factors: "(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

---

Cir. Aug. 13, 2026) ("In sum, our careful study of the disputed statutory texts leads us to join the Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits in holding that noncitizens . . . who are present in the United States without admission are not subject to § 1225(b)(2)(A)'s mandatory detention provision, but rather, are governed by § 1226."); *Lopez Garcia v. Guadian*, ___ F.4th ____, 2026 WL 2661092, at *6 (4th Cir. Sept. 10, 2026) ("Section 1226, not Section 1225, applies to noncitizens who . . . have been present in the United States for years regardless of how they entered our country.").

safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at *9 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (internal quotation marks omitted)). First, as in *Buele Morocho*, we conclude that "mandatory detention implicates [Kumar's] constitutionally protected interest in avoiding physical restraint." *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (internal quotation marks omitted)). Second, we too conclude that "the absence of an opportunity for a neutral decisionmaker to assess whether [Kumar] [is] dangerous or [a] flight risk[] presents a high risk of erroneously depriving [Kumar] of [his] liberty interest." *Id.* (citations omitted). Third, on the record before us, we likewise conclude that "the Government's legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here, particularly when [this] non-criminal individual[] [was] detained absent evidence that [he] is dangerous or a flight risk, and the Government has not argued that [a] bond hearing[] [is] unduly burdensome." *Id.* at *10 (citation omitted).

Thus, we conclude that the *Mathews* factors weigh in the

petitioner's favor, and his detention without a bond hearing violated his due process rights. *See id.*

## III. CONCLUSION

For the foregoing reasons, the court concludes that, because he is not actively seeking admission and has been living in interior of the United States for an extended period of time, the petitioner's continued mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2)(A) is unlawful. Accordingly, we will grant the petition and order the petitioner's immediate release from custody. *See Andrade v. Rose*, No. 26-603, 2026 WL 401189 (E.D. Pa. Feb. 12, 2026) (granting immediate release), *aff'd sub nom. Buele Morocho v. Warden Phila. FDC*, ___ F.4th ____, 2026 WL 2546223 (3d Cir. Aug. 28, 2026); *Buele Morocho v. Jamison*, No. 25-cv-05930, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025) (same), *aff'd sub nom. Buele Morocho v. Warden Phila. FDC*, ___ F.4th ____, 2026 WL 2546223 (3d Cir. Aug. 28, 2026).

An appropriate order follows.

Dated: September 15, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge